IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ROBIN COLLINS,** individually, and as parent and next friend of B.C.**,**

**Plaintiff,**

v.

**ASCENSION VIA CHRISTI HOSPITALS, INC.,** and **ASCENSION MEDICAL GROUP VIA CHRISTI, P.A.,**

**Defendants.**

Case No. 22-CV-1223-JAR-RES

## MEMORANDUM AND ORDER

Plaintiff Robin Collins, individually and as parent and next friend of B.C., filed suit against Defendants Ascension Via Christi Hospitals, Inc. and Ascension Medical Group Via Christi, P.A. (collectively "Defendants"). She asserts that Defendants refused to provide her and her daughter with medical services because Plaintiff was unable to wear a mask when visiting Defendants' facilities. She brings three claims: (1) a violation of § 504 of the Rehabilitation Act,[1] (2) a violation of § 1557 of the Affordable Care Act,[2] and (3) a claim under the Kansas Consumer Protection Act ("KCPA").[3]

Before the Court is Defendants' Motion to Dismiss (Doc. 36), contending that Defendants offered Plaintiff reasonable accommodations, but she rejected them, and thus Plaintiff fails to state a Rehabilitation Act or Affordable Care Act claim. They also assert that Plaintiff's KCPA claim fails because she fails to meet the applicable heightened pleading

---

[1] 29 U.S.C. § 794.

[2] 42 U.S.C. § 18116.

[3] K.S.A. § 50-623, *et seq*.

standard, fails to adequately plead a deceptive act, and fails to allege facts that she was "aggrieved" by Defendants' conduct. For the reasons stated in detail below, the Court grants in part and denies in part Defendants' motion.

## I.     Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[4] and must include "enough facts to state a claim for relief that is plausible on its face."[5] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[6] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[7] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[8] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[9]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but

---

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

[5] *Id*. at 570.

[6] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[8] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[10] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[11] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

## II.     Factual and Procedural Background[14]

Plaintiff Collins is a resident of Kansas, and she is the mother of B.C.  Defendant Ascension Via Christi Hospitals, Inc. ("Hospital)" is a hospital in Wichita, Kansas, and Defendant Ascension Medical Group Via Christi, P.A. ("Medical Group") is a medical office in Wichita.  Defendants primarily offer medical services to the general public.

Plaintiff suffers from severe anxiety and post-traumatic stress disorder ("PTSD"), brought on by abuse and trauma.  She is unable to think, focus, or communicate when her anxiety or PTSD is active.  Prior to the COVID-19 pandemic, she went to Defendants' facilities.

Beginning in April 2020, Defendants began refusing Plaintiff and her child, B.C., services because Plaintiff was unable to wear a mask or loose-fitting garment around her face.

---

[10] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[11] *Id.* at 678–79.

[12] *Id*. at 679.

[13] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[14] The facts are taken from Plaintiff's Amended Complaint filed on December 16, 2022.  Plaintiff also attached three exhibits and references those exhibits throughout her complaint.  Pursuant to Fed. R. Civ. P. 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  In addition, on a motion to dismiss, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

Plaintiff contends that the requirement to cover her nose and mouth with a mask, or a loose-fitting garment, exacerbates her anxiety and PTSD. She made Defendants aware of her disability and her need for reasonable accommodations and that she be excused from the mask mandate.

On October 12 and 13, 2020, Defendants' staff yelled at Plaintiff and harassed her because she would not wear a mask. Upon arrival at the Hospital, Defendants' staff told Plaintiff that she had to sit and wait in her car to be allowed to enter the building because she could not wear a mask. When Defendants called Plaintiff into the building, they separated her from other patients in the waiting room and provided her a face shield to wear. Plaintiff tried to comply with wearing the shield, but it triggered her anxiety and PTSD. When she attempted to remove it, Defendants badgered her. Eventually Hospital staff took Collins back to a room but continued to ask her to wear the face shield. Plaintiff could not remain in the Hospital, and she left.

On October 16, 2020, Plaintiff received an exemption letter for wearing a mask from her treating physician. On November 18, 2020, the Medical Group sent Plaintiff a letter claiming that the Medical Group adhered to the Centers for Disease Control ("CDC") Universal Masking Guidelines. The letter provided that everyone must wear a face mask while in a public setting except for children under the age of two, "anyone who is experiencing trouble breathing," and "anyone who is unconscious, incapacitated or otherwise unable to remove the mask without assistance."[15] This letter also stated that "drive through visits" were available for drive-through vaccination and COVID-19 testing services. In this letter, the Medical Group stated that Plaintiff would not be allowed to enter any of its outpatient, or other non-emergency settings, if she did not wear a mask or garment to cover her nose and mouth.

---

[15] Doc. 28-1 at 1.

4

On March 14, 2021, Plaintiff visited the Hospital's Emergency Department with complaints of dizziness, blurred vision, faint feeling, and severe abdominal pain and swelling. She let Hospital staff know that she had a disability that prevented her from wearing a mask or covering her face with a garment. Hospital staff refused to treat her and pushed her out of the facility in a wheelchair. Hospital staff falsely documented in its records that Plaintiff left without being seen when she was ejected from the facility. The Hospital had no policy to address patients who could not wear a mask.

In May 2021, the Centers for Medicare & Medicaid Services ("CMS") issued deficiency findings against the Hospital. In this notice, it found that "the hospital failed to develop a policy that addressed how staff was to provide an appropriate medical screening examination (MSE) for a patient who presented to the emergency department (ED) for services and could not wear a mask."[16] On June 14, 2021, the Kansas Department of Health and Environment ("KDHE") sent Plaintiff a letter stating that her complaint against the Hospital was substantiated.[17]

On April 22, 2021, May 19, 2021, and June 6, 2021, the Medical Group refused to see B.C. because of Plaintiff's inability to wear a mask. On September 13, 2021, Plaintiff contacted the Medical Group to make an appointment for B.C., who was experiencing ear pain. The receptionist told Plaintiff that the masking policy had not changed. Plaintiff asked if there was a written policy, and the receptionist told Plaintiff that all patients have to wear a mask, no exceptions.

---

[16] Doc. 28-2 at 1. Plaintiff attached a copy of the CMS determination to her Amended Complaint.

[17] Plaintiff also attached this document as an exhibit to her Amended Complaint. The Court notes, however, that Plaintiff did not provide a copy of the complaint that she gave to the KDHE. Thus, the Court is unaware of the specific allegations Plaintiff's complaint to the KDHE or what specific allegations the KHDE substantiated.

On December 29, 2021, the Medical Group contacted Plaintiff to schedule a CT scan per the referral of Plaintiff's nurse practitioner. Plaintiff informed the Medical Group that she was unable to wear a mask due to her disability and that she had two letters that she could show them, explaining her condition. The Medical Group stated that she could not be seen on their campuses without a mask, and no exemptions were permitted.

On January 25, 2022, Plaintiff called the Medical Group to make an appointment for B.C. due to ear pain and possible ear infection. The Medical Group refused to make the appointment due to its masking policy. In addition, on March 3, 2022, and July 8, 2022, the Medical Group refused to schedule an appointment for B.C. because of its policy requiring people to wear masks in its facilities. It did not offer Plaintiff a "drive through" appointment.

Plaintiff has medical conditions that require medical supervision and appointments. Plaintiff has been able to obtain treatment for B.C. at minor medical clinics, but B.C. needs to establish care with a consistent treating physician. B.C.'s father is employed on a full-time basis and must miss shifts or use paid leave to take B.C. to the doctor.

Defendants have policies and make affirmative statements that they do not discriminate against individuals with disabilities and that they make reasonable accommodations available to individuals with disabilities. These policies are posted on walls in Defendants' facilities. Plaintiff read one or more statements of Defendants' policies regarding reasonable accommodations for individuals with disabilities.

Plaintiff filed her original Complaint on October 3, 2022. Defendants filed a Motion to Dismiss. Plaintiff then filed an Amended Complaint on December 16, 2022, making Defendants' motion moot. Defendants filed the pending motion to dismiss the Amended Complaint on January 13, 2023.

On March 16, 2023, Plaintiff filed a Motion for Leave to File Second Amended Complaint. Magistrate Judge Schwartz denied Plaintiff's request.[18] In her Order, she found that Plaintiff did not demonstrate good cause for amendment because it was untimely—filed two months after the deadline to amend the pleadings and one month after the motion to dismiss was fully briefed. In addition, she determined that Defendants would be unduly prejudiced by the amendment because the new factual allegations broadened the scope of the Amended Complaint, and it would require a wholesale revision of the scheduling order, impacting discovery. Thus, Judge Schwartz denied Plaintiff's motion to amend.

### III. Discussion

#### A. Rehabilitation Act Claim

Plaintiff's Amended Complaint includes allegations that Defendants refused to provide Plaintiff with medical services because they would not reasonably accommodate Plaintiff's need to be excused from wearing a mask. It also alleges that Defendants refused to provide B.C., her minor daughter, with medical services because Plaintiff was unable to wear a mask when visiting Defendants' facilities. The Court will address Plaintiff and B.C. separately.

*1. Plaintiff*

Defendants assert that Plaintiff's Rehabilitation Act claim fails as a matter of law because they satisfied their duty to provide Plaintiff a reasonable accommodation. Plaintiff contends that Defendants' options were not reasonable, in particular as it relates to her need for emergency services in March 2021. In addition, she argues that Defendants sometimes failed to offer her any type of accommodations.

---

[18] Doc. 50.

"Section 504 of the Rehabilitation Act states that '[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'"[19]  "The Rehabilitation Act imposes a duty . . . to provide reasonable accommodations to qualified individuals with a disability."[20]  The "same substantive standards" govern claims brought under Title II of the ADA and § 504 of the Rehabilitation Act.[21]  Thus, courts often analyze Rehabilitation Act claims in the same way they analyze ADA claims.[22]

"[P]ublic entities discriminate in violation of the Rehabilitation Act if they do not make reasonable accommodations to ensure meaningful access to their programs."[23]  To state a failure to accommodate claim under the Rehabilitation Act, a plaintiff must show that she "requested a plausibly reasonable accommodation."[24]  Whether an accommodation is reasonable "is a mixed question of law and fact."[25]  In addition, "[t]here is no precise reasonableness test, but an accommodation is unreasonable if it either imposes undue financial or administrative burdens, or requires a fundamental alteration in the nature of the program."[26]

---

[19] *Quidachay v. Kan. Dep't of Corrs.*, 239 F. Supp. 3d 1291, 1294 (D. Kan. 2017) (quoting 29 U.S.C. § 794).

[20] *Giardina v. Brennan*, No. 18-cv-4116-HLT, 2019 WL 5424762, at *7 (D. Kan. Oct. 23, 2019) (citing *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012)).

[21] *Hamer v. City of Trinidad*, 924 F.3d 1093, 1099 (10th Cir. 2019) (quoting *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009)).

[22] *Id.*

[23] *DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist.*, 126 F.3d 1102, 1106 (8th Cir. 1997); *see also Alexander v. Choate*, 469 U.S. 287, 301 (1985) (noting that an accommodation is reasonable if it allows "meaningful access to the benefit that the grantee offers").

[24] *Brown v. Austin*, 13 F. 4th 1079, 1084–85 (10th Cir. 2021) (quoting *Sanchez*, 695 at 1177).

[25] *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050–51 (10th Cir. 2017) (quoting *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004)).

[26] *DeBord*, 126 F.3d at 1106 (citations omitted).

Here, Defendants argue that Plaintiff did not request a reasonable accommodation because Plaintiff insisted on only her preferred accommodation of not wearing a face covering. Plaintiff contends that Defendants did not offer her a reasonable accommodation. At this stage in the proceedings, the Court considers only the well-plead facts alleged in Plaintiff's Amended Complaint, and the documents attached thereto. Plaintiff alleges several instances in which Defendants failed to reasonably accommodate her, and the circumstances of these instances differ, including several visits to the hospital and at least one appointment in a medical office.[27] In addition, Plaintiff's hospital visits occurred at different times (October 2020 and March 2021), and thus the circumstances surrounding the COVID-19 pandemic were likely different. Whether an accommodation was reasonable must be based on the surrounding facts and circumstances, and the Court cannot make this determination on the facts asserted in Plaintiff's Amended Complaint.

Defendants also assert that excusing Plaintiff from the masking requirement would have posed a direct threat to the health and safety of Defendants' employees and patients. A "direct threat" is "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation."[28] The parties disagree as to whether the direct threat defense is applicable to Plaintiff's claim. Plaintiff contends that the defense is limited to employment claims under the Rehabilitation Act while Defendants argue that it is applicable to all Rehabilitation Act claims.

---

[27] The Court notes that on at least one hospital visit, Plaintiff alleges that Defendants provided her with a face shield. The parties do not discuss whether this was a reasonable accommodation, but it appears that Plaintiff alleges it was not.

[28] *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1268 (10th Cir. 2015) (quoting 42 U.S.C. § 12111(3)).

Regardless of whether the defense is available, courts consider four criteria when determining whether an individual would pose a direct threat.[29] These factors include "(1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm."[30] There are no facts alleged in the Amended Complaint bearing on these factors; therefore, the Court cannot determine whether Defendants' direct threat defense is applicable. Thus, the Court denies Defendants' motion to dismiss as to Plaintiff.

*2. B.C.*

As to the allegations that B.C. could not be seen in Defendants' facilities because Defendants did not offer Plaintiff reasonable accommodations, this claim fails. There are no allegations that B.C. needed accommodations. Instead, the allegations state that Defendants failed to reasonably accommodate Plaintiff's request to not wear a mask if Plaintiff was accompanying B.C.

Yet, the allegations make clear that Plaintiff was not the only individual available to take B.C. to Defendants' offices. Indeed, Plaintiff specifically alleges that B.C.'s father could take B.C. to the doctor, but because he works on a full-time basis, he would have to miss shifts or use paid leave to take B.C. Although this scenario may be an inconvenience, the allegations demonstrate that B.C. was able to obtain medical services through Defendants. In addition, Defendants informed Plaintiff that a "trusted family member or friend [could] accompany patients whose guardian cannot wear masking or [a] loose fitted garment."[31] Thus, Defendants also offered additional options for B.C. to obtain medical services. Accordingly, Plaintiff's need

---

[29] *Id.*

[30] *Id.* (quoting 29 C.F.R. § 1630.2(r) (alterations omitted).

[31] Doc. 28-1 at 1.

10

for accommodation did not affect B.C.'s ability to visit Defendants' offices, and B.C. has no claim.

## B.     Affordable Care Act Claim

Defendants and Plaintiff agree that Plaintiff's Affordable Care Act claim is governed by the same standard as Plaintiff's Rehabilitation Act claim. Section 1557 of the Affordable Care Act provides that "an individual shall not, on the ground prohibited under . . . section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."[32] "'Section 1557 does not create new bases of prohibited discrimination, but rather incorporates the grounds of four longstanding federal nondiscrimination statutes: Title VI, Title IX, the ADA, and Section 504 [of the Rehabilitation Act]'. . . . Accordingly, where [a plaintiff's] Rehabilitation Act claim fails, her claim arising under the ACA must also fail as a matter of law."[33] Thus, for the reasons stated above with regard to the Rehabilitation Act claim, Defendants' motion to dismiss Plaintiff's Affordable Care Act is denied as to Plaintiff and granted as to B.C.

## C.     KCPA Claim

Plaintiff claims a KCPA violation by alleging that Defendants made affirmative misrepresentations to Plaintiff that they make reasonable accommodations to individuals with disabilities. In addition, Plaintiff alleges that these reasonable accommodation policies are posted on placards or posters on walls in Defendants' facilities. She claims that because they did not offer her reasonable accommodations, Defendants violated the KCPA. Defendants assert

---

[32] 42 U.S.C. § 18116(a).

[33] *Church Ekklasia Sozo Inc. v. CVS Health Corp.*, No. 20-cv-00382, 2022 WL 1572732, at *7 (W.D.N.C. Feb. 25, 2022) (quoting *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 671 (N.D. Tex. 2016)).

that Plaintiff's KCPA claim fails as a matter of law because she fails to plead it with particularity, she fails to adequately plead a deceptive or unconscionable act,[34] and she fails to allege that she was aggrieved by any KCPA violations.

Pursuant to K.S.A. § 50-626(b)(2), a deceptive act or practice may include "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact." Under Fed. R. Civ. P. 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This provision "applies to allegations of deceptive trade practices under the KCPA."[35] Thus, to survive a motion to dismiss, an allegation of deceptive practices under the KCPA "must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[36] In addition to pleading the when, where, what, and who of the alleged misrepresentations, a plaintiff bringing a KCPA claim must allege she is an "aggrieved consumer, that is, suffered some 'loss or injury' as a result of the violation."[37]

In Plaintiff's response to Defendants' motion, she specifically identifies three deceptive acts: (1) Defendants' posters stating that they offer reasonable accommodations, (2) a March 2021 incident in which one of Defendants' employees told Plaintiff that due to the Governor's mandate, she was required to wear a mask, and (3) a November 18, 2020 letter which stated that individuals will be excused from the mask mandate if they are unconscious, incapacitated, or otherwise unable to remove the mask without assistance.

---

[34] In Plaintiff's response to Defendants' motion to dismiss, she affirmatively drops her unconscionable acts claim under the KCPA. Thus, the Court will not address unconscionability.

[35] *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 930 (D. Kan. 2007) (citing *In re Univ. Serv. Fund Tel. Billing Pracs, Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003)).

[36] *Id.* (internal quotation marks and citations omitted).

[37] *Caputo v. Prof'l Recovery Servs., Inc.*, 261 F. Supp. 2d 1249, 1261 (D. Kan. 2003) (quoting *Finstad v. Washburn Univ.*, 845 P.2d 685, 690 (Kan. 1993)).

As to the first allegation, Plaintiff asserts that Defendants misrepresent that they offer reasonable accommodations. Plaintiff, however, includes as an exhibit to her Amended Complaint a letter in which Defendants set forth different options (i.e. accommodations) for individuals who could not wear masks to their facilities. Thus, Plaintiff's allegations and exhibit show that Defendants offered Plaintiff accommodations. The parties, however, disagree over whether those accommodations were reasonable. A disagreement over whether an accommodation is reasonable is not a deceptive statement for purposes of the KCPA. Accordingly, Plaintiff does not identify a deceptive act. Furthermore, she fails to identify any facts showing that Defendants engaged in willful deception when stating that they offer reasonable accommodations.

As to the second allegation, Plaintiff contends that Defendants' employees told her in March 2021 that due to the Governor's mandate, she was required to wear a mask. She claims that this was a deceptive statement because the Kansas mask mandate expressly exempted Plaintiff because she had a mental health condition preventing her from wearing a mask. The Court first notes that this incident is not described in the Amended Complaint. Instead, the allegations state that Plaintiff visited the emergency department on March 14, 2021, and the hospital did not have a policy on how to treat patients who could not wear a mask. The allegation in the Amended Complaint does not involve any deceptive conduct.[38] The Court will nevertheless address Plaintiff's contention in her briefing.

---

[38] Generally, the Court will not consider new claims not included in a plaintiff's complaint and only raised for the first time in a response brief. *See Turner v. McKune*, No. 00-3456-KHV, 2001 WL 1715793, at *3, n. 1 (D. Kan. Dec. 21, 2001).

Plaintiff fails to allege willful and deceptive conduct with this incident. "It is not sufficient to allege that [a defendant] willfully gave information that later proved to be false."[39] Instead, there must be allegations that a defendant "intended to give the [false] information."[40] Here, there are no allegations that Defendants' employee intended to give Plaintiff false information regarding the Governor's mask mandate and whether it covered Plaintiff. Accordingly, Plaintiff fails to adequately allege a KCPA violation for this incident.

Finally, as to the third allegation that Defendants informed her in a November 18, 2020, letter that individuals will be excused from the mask mandate if they are unconscious, incapacitated, or otherwise unable to remove the mask without assistance, Plaintiff does not identify deceptiveness in this statement. There are no allegations that Plaintiff went to Defendants' facilities unconscious, incapacitated, or otherwise unable to remove a mask without assistance. Plaintiff alleges that *when* her anxiety and PTSD are active, they render her incapacitated in that she is unable to think, focus, or communicate, and that the requirement to wear a mask exacerbates her anxiety. But there are no allegations that she went to Defendants' facilities incapacitated. Because there are no allegations regarding Plaintiff's incapacitation at Defendants' facilities, there are no allegations that Defendants' statement that individuals will be excused from the mask mandate if they are unconscious, incapacitated, or otherwise unable to remove the mask without assistance is false or deceptive. In addition, Plaintiff again fails to allege willful deception in these statements. Accordingly, Plaintiff fails to adequately allege a deceptive act.

---

[39] *Tufts v. Newmar Corp.*, 53 F. Supp. 2d 1171, 1179 (D. Kan. 1999).
[40] *Id.*

In this case, Plaintiff's allegations fall short of adequately alleging a KCPA claim. Thus, Defendants' motion to dismiss this claim is granted.

In sum, Plaintiff's Rehabilitation Act and Affordable Care Act remain only as they pertain to Plaintiff. They are dismissed with regard to B.C. In addition, Plaintiff's KCPA claim is dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 36) is **granted in part** and **denied in part**. Defendants' motion to dismiss is granted as to Plaintiff's Rehabilitation Act and Affordable Care Act with regard to B.C., and the KCPA claim. Defendants' motion to dismiss is denied as to Plaintiff's Rehabilitation Act and Affordable Care Act claim with regard to Plaintiff in her individual capacity.

**IT IS SO ORDERED.**

Dated: May 9, 2023

                                                S/ Julie A. Robinson
                                                JULIE A. ROBINSON
                                                UNITED STATES DISTRICT JUDGE